**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
           sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY TIBBS, ANDREW CASTILLO, and ERIC WILIM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARLO TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Casey Tibbs, Andrew Castillo, and Eric Wilim ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Arlo Technologies, Inc. ("Arlo" or "Defendant") for violation of Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. The following allegations are based on their counsel's investigation and upon information and belief, except for allegations concerning Plaintiffs themselves, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Arlo Technologies, Inc., ("Arlo" or "Defendant") in collecting, storing and using their and other similarly situated individuals' biometric identifiers and biometric information (referred to collectively at times as "biometrics") without obtaining informed written consent and failing to provide the requisite data retention and destruction schedule, in direct violation of BIPA.

2. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/15(c). "For example, social security numbers, when compromised can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identify theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3. In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant may not obtain and/or possess an individual's biometrics unless it informs that person in writing that biometric identifiers or information will be collected or stored. *See* 740 ILCS 14/15(b).

4. Likewise, BIPA also requires that entities collecting biometrics must publish and make publicly available written retention schedules and guidelines for permanently destroying biometrics collected. *See* 740 ILCS 14/15(c).

5. Defendant advertises a Person Detection feature as part of its home security system. Defendant's home security systems capture pixelated infrared scans of people and collects and

stores these biometric identifiers and information to detect humans. The Person Detection feature presently uses "advanced algorithms" to filter and alert its customers when the camera and AI detect movement by people, instead of "everyday movement, such as tree branches" or animals to "reduce[] the amount of unwanted alerts."[1] But Arlo's patents confirm that these pixelated infrared scans *can be used to identify particular individuals* whenever Defendant wants. In fact, Arlo's patents boast that these pixelated infrared scans can identify individuals better than many other biometric identifiers presently collected by other companies.

6. In direct violation of each of the foregoing provisions of §§ 15(B) and 15(A) of BIPA, Defendant collected, stored, and used—without providing notice, obtaining informed written consent and without publishing a data retention schedule—the biometric identifiers and biometric information of delivery drivers making deliveries to homes using Defendant's home security system.

7. This is particularly concerning because other home security companies like Google Nest and Wyze do not allow their cameras and doorbells with facial recognition capabilities to be used in Illinois.[2]

8. BIPA confers on Plaintiffs and all those similarly situated Illinois residents who make home deliveries the right to know of such risks, which are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist while their biometric identifiers and information is stored and used by Defendant's Person Detection system, which collects, stores, and scans biometrics to create numerical representations and mechanical measurements necessary for identifying and differentiating specific shapes, objects and people.

---

[1] Arlo, *What is Arlo's Person Detection Feature?*, (Nov. 29, 2022) available at https://kb.arlo.com/000058833/What-is-Arlo-s-person-detection-feature (last accessed Sep. 28, 2023).

[2] Google Store, *Nest Aware*, available at https://store.google.com/us/product/nest_aware?hl=en-US&pli=1 (last accessed Oct. 2, 2023); Wyze, How do I set up Friendly Faces? (July 21, 2023), available at https://support.wyze.com/hc/en-us/articles/5876322908315-How-do-I-set-up-Friendly-Faces-#:~:text=Go%20to%20your%20Camera%20Settings,Finish%20setting%20up%20Friendly%20Faces (last accessed Oct. 2, 2023).

9. Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois delivery drivers and to recover statutory damages for Defendant's unauthorized collection, storage and use of their biometrics in violation of BIPA.

## PARTIES

10. Plaintiff Casey Tibbs is a resident of Illinois. Plaintiff Tibbs works as a DoorDash delivery driver who makes deliveries to customers' homes. As part of Plaintiff Tibbs's regular deliveries process, Plaintiff Tibbs walks to the front door of the customer's residence to make the delivery. On multiple deliveries, infrared scans of Plaintiff Tibbs's face were captured by Defendant's security system.

11. Plaintiff Andrew Castillo is a resident of Illinois. Plaintiff Castillo works as a DoorDash delivery driver who makes deliveries to customers' homes. As part of Plaintiff Castillo's regular delivery process, Plaintiff Castillo walks to the front door of the customer's residence to make the delivery. On multiple occasions, infrared scans of Plaintiff Castillo's face were captured by Defendant's security system.

12. Plaintiff Eric Wilim is a resident of Illinois. Plaintiff Wilim works as a UPS delivery driver who makes deliveries to customers' homes. As part of Plaintiff Wilim's regular delivery process, Plaintiff Wilim walks to the front door of the customer's residence to make the delivery. On multiple occasions, infrared scans of Plaintiff Wilim's face were captured by Defendant's security system.

13. Defendant Arlo Technologies, Inc., is a Delaware corporation with its principal place of business in Milpitas, California. Arlo is a home security company that offers security cameras supported by high quality video and artificial intelligence ("AI") monitoring.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this district, in Milpitas, California.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims took place within this District and because Defendant is at home in this district.

## FACTUAL ALLEGATIONS

**I.     Defendant Arlo's Home Security System and Its Person Detection Feature.**

17. Arlo is one of the largest players in the home security market in the United States. According to its most recent investor report, Arlo generated $490 million in revenue in 2022 and had a particularly strong 53% year-over-year growth in the last quarter of 2022.[3]

18. Researchers credit, among other reasons, the industry's rapid growth to competition and innovation. Chief among the burgeoning technologies that home security companies are vying to integrate into their products is artificial intelligence ("AI").[4]

19. AI offers home security systems the possibility to transition from passive surveillance to active security. Particularly appealing is AI's ability to differentiate between different types of movements, reduce false alarms, minimize meaningless alerts, recognize voice commands, and personalize security systems to learn and adapt to homeowners' habits and routines for more dynamic surveillance and security.[5]

20. Arlo is front and center in the AI incorporation race with its Person Detection feature. The feature uses "advanced algorithms" to "alert you when a person is detected and filters out everyday movement, such as tree branches."[6] Additionally, Arlo advertises that the feature "also allows you to search the Arlo Feed for videos containing people."[7] The homeowner can

---

[3] Arlo, *Arlo Reports Fourth Quarter and Full Year 2022 Results*, (Mar. 7, 2023) *available* https://shorturl.at/aekqs (last accessed Sep. 28, 2023).

[4] *Id.*

[5] Rebellion Research Ai Asset Management, *How AI is Used in Home Security: Safer Living with Intelligent Systems*, (July 3, 2023) *available* https://www.rebellionresearch.com/how-ai-is-used-in-home-security-safer-living-with-intelligent-systems (last accessed Sep. 28, 2023).

[6] *See* Arlo, *supra* note 1.

[7] *Id.*

activate the Person Detection feature and "[u]sing advanced AI," Arlo's system will send the homeowner "real-time alerts when people approach your home."[8]

21. Arlo's AI integration is not just limited to people. Arlo also offers homeowners multiple object-specific detection features. Among these additional features are: (1) Package Detection, which allows the homeowner to "receive [] notifications when [their] Arlo camera sees a package being picked up or dripped off"; (2) Vehicle Detection, which "detects cars, trucks, buses, motorbikes, and bicycles, and allows [the homeowner] to receive notifications when [their] Arlo camera detects a vehicle," and; (3) Animal detection, which alerts the homeowner when the "Arlo camera detects an animal . . . any larger than a small rodent."[9] Activating or deactivating each feature simply requires the homeowner toggle the motion alert settings for each category in their Arlo app.[10]

22. For Arlo's AI to accomplish its person detection tasks, it needs to collect, use, and store biometric identifiers and information. In particular, Arlo devices collect, use, and store passive infrared radiation and pixels to detect motion, and in turn, discern people from animals. "Most Arlo devices detect motion using passive infrared" technology.[11] Alternatively, the "Arlo Q, Arlo Q Plus, . . . and Arlo Essential Indoor Series use pixel based, frame-by-frame motion detection."[12]

23. Passive Infrared ("PIR") "detects an object that is warmer than the surrounding environment."[13] Similarly, "[p]ixel based motion detection technology analyzes changes in video frames to trigger motion detection alerts."[14]

---

[8] Arlo, *What are Arlo Smart Notifications and how do I set them up? – Arlo Secure 4.0*, (Feb. 14, 2023) *available* https://kb.arlo.com/000062927 (last accessed Sep. 28, 2023).
[9] *Id.*
[10] *Id.*
[11] Arlo, *How does Arlo motion detection work?*, (Sep. 29, 2023) *available* https://kb.arlo.com/583/How-does-the-motion-detection-feature-work-on-my-Arlo-cameras#:~:text=Arlo%20devices%20trigger%20when%20the,toward%20or%20away%20from%20it (last accessed Sep. 29, 2023).
[12] *Id.*
[13] *Id.*
[14] *Id.*

24. The combination and analysis of these two types of data—infrared radiation and pixels, allows Arlo to identify particular individuals. As explained by Arlo's own patent, its infrared and pixel-based motion detection systems are capable of—and designed for—capturing, storing, and analyzing biometric information and biometric identifiers.

25. In its European patent for a "Face Identification System Using Multiple Spectrum Analysis," Arlo explains that its facial identification "system detects electromagnetic radiation in both a visible spectrum and an infrared spectrum." European Patent Office, E.P. No. 4 156 118 A1 (issued Mar. 3, 2023) at 1. To make a "facial identification," its stored image database receives "a first image" and a "second image" "where the first image and the second image include a common face." *Id.* at 2. "A potential match to the common face is identified using a facial detection module . . . The potential match includes the common face in a corresponding first image and a corresponding second image. Each of the corresponding first and second images are stored in a storage module in communication with the controller, and the facial detection module is configured to identify the first image received at the controller as a match to the corresponding first image stored in the storage module. The potential match is confirmed using the facial detection module by identifying the second image received . . . as a match to the corresponding second image." *Id.*



*Id.* at 14.

26. Similarly, as it relates to pixel-based detection, "each pixel may similarly be configured in a physical array" whereby "the array of values may be arranged in correspondence to the physical arrangements of the individual sensing elements."[15] *Id.* at 8. Thus, "[w]hen an image

---

[15] Sensing elements include technical components necessary for capturing images. *See Id.* at 5.

. . . contains the face of an individual, the portion of the image containing the face will contain a series of unique values which are generated by each individual sensing element and which correspond to the individual face." *Id.*

27. As Arlo explains, the face detection module works by analyzing "the face of each individual [which] will generate a unique value or set of values in the visible spectrum that may be utilized to subsequently identify the individual." *Id.* at 8. Arlo's technology will then "utilize the array of unique values corresponding to the face . . . to identify a match." *Id.* And "[j]ust as the face of each individual will generate a unique value or set of values in the visible spectrum, the face of each individual will similarly generate a unique value or set of values in other electromagnetic spectrums. The imaging device… may be configured to capture electromagnetic radiation in the… infrared spectrum." *Id.* at 9. Figures 5A and 6A below, show how an individual may be captured in the visible light spectrum, and Figures 5B and 6B show that same individual being captured in the infrared spectrum. *Id.* at 17.



28. As illustrated above in Figures 5B and 6B, Arlo security systems captures people's infrared radiation, arranges this information into pixelated dots, and its software thereby reads and maps peoples' facial geometry, which allows the software to distinguish between individuals and allows the software to send notifications to homeowners when the system detects objects the home

owner set the system to surveil for, but not others (*e.g.*, having the Person Detection feature toggled on but not the Animal Detection feature).

29. Accordingly, Arlo boasts that "the invention provides a new and useful facial recognition system that may further automatically execute tasks in response *to the detection of a particular individual*" and between particular known and previously detected individuals using collected biometrics: "if an unrecognized person is detected, the system [] may execute a different task such as transmitting a push notification to a user device to the effect of: 'UNKNOWN PERSON AT FRONT DOOR.' The converse also is true. If a specific person is identified, a message may be pushed to the user device to the effect of 'MARY DETECTED AT FRONT DOOR.'" *Id.* at 8 (emphasis added).

30. As demonstrated, the system's mapped facial geometry is overlaid against a separate biometric-capturing image, applied even if the subject is moving. E.P. Patent No. 4 156 118 A1 at 18.



31. What is more, Arlo claims that the pixelated infrared scans its cameras collect are actually better biometric identifiers than the images from visible light that are presently used. "The infrared image of an individual is unique to an individual and cannot be imitated in a manner similar to a visible image. Physical attributes, such as an individual's hairline, facial hair, sinus

cavities, or the like, impact the amount of heat radiated from an individual… Such personal attributes may be impossible, or at least very difficult, to copy in order to trick the monitoring device… into obtaining a fake infrared image corresponding to a printed image of a different individual." *Id*. at 9.  In other words, whereas delivery drivers may once have been able to protect their biometric privacy from cameras capturing visible light by wearing baseball caps and keeping their heads low while dropping off packages, with Arlo's pixelated infrared scans, there is no escape.

## II. Illinois' Biometric Information Privacy Act.

32. BIPA defines biometric identifiers as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  740 ILCS 14/10.

33. Similarly, BIPA defines biometric information as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

34. Facial geometry is a permanent, unique biometric identifier associated only with a specific person.  Collecting and storing a person's face geometry exposes them to serious and irreversible privacy risks.  For example, if a device or database containing stored images of facial geometry is hacked, breached or otherwise compromised, the person has no means by which they can prevent identity theft or unauthorized hacking of secure devices which use facial recognition to grant access.

35. Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as facial geometry.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

36. BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

    (1)    informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

37. Additionally, Section 15(a) requires that entities in possession of biometrics publish a schedule detailing its retention and destruction plans concerning the biometric information in its possession.

38. Section 15(a) of BIPA also provides that:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

39. As alleged below, Defendant's practices of collecting, storing, and using delivery drivers' biometric identifiers and biometric information without informed written consent violated all three prongs of § 15(b) of BIPA. Furthermore, Defendant violated § 15(b) of BIPA by failing to publish and make publicly available any written policy regarding Defendant's schedule and guidelines for retaining and permanently destroying individuals' biometrics.

**III.   Defendant Violates Illinois' Biometric Information Privacy Act.**

40. Unbeknownst to Plaintiffs, and in direct violation of § 15(b)(1) of BIPA, Defendant collected, scanned, and then indefinitely stored in an electronic database Plaintiffs' biometric information and biometric identifiers when Plaintiffs and Class Members made deliveries to the homes of Defendant's customers who use Defendant's security system. Each time Plaintiffs and Class Members made a delivery to Defendant's customers' homes, Defendant's cameras collected Plaintiffs' face geometry and stored the image of Plaintiffs' face geometry in an electronic database without ever informing Plaintiffs in writing that it was doing so.

41. Moreover, in direct violation of §§ 15(b)(2) and 15(b)(3) of BIPA, Defendant never informed Plaintiffs and Class Members who had their biometric information and biometric identifiers collected, of the specific purpose and length of time for which their biometrics would be collected, stored, and used, nor did Defendant ever obtain a written release.

42. Finally, and in direct violation of § 15(a) of BIPA, Defendant failed to publish for public access policies identifying its retention schedules or guidelines for permanently destroying any of these biometrics.

## CLASS ALLEGATIONS

43. Plaintiffs bring this matter on behalf of themselves and all similarly situated in the following Class:

> **Illinois Class:** All natural persons in Illinois who are delivery drivers and who, when making deliveries, had their biometric information and biometric identifiers collected, stored, and scanned by Arlo cameras and software from October 4, 2018, to present.

44. Excluded from each of the Classes are: (1) any Judge of Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

45. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the Class is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant and its agents.

46. Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more Subclasses, in connection with their motion for class certification, or at any other time, based on, *inter alia*, changing circumstances and new facts obtained.

47. **Numerosity:** Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of delivery drivers who are Class

Members described above who have been damaged by Defendant's unlawful collecting, storing, and using of their biometric identifiers and biometric information.

48. **Commonality and Predominance:** The questions of law and fact common to the Class which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a) whether Defendant collected or otherwise obtained Plaintiffs' and the Class's biometric identifiers and/or biometric information;

   b) whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers and/or biometric information;

   c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's biometric identifiers and/or biometric information;

   d) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

   e) whether Defendant used Plaintiffs' and the Class's biometric identifiers and/or biometric information to identify them;

   f) whether Defendant destroyed Plaintiffs' and the Class's biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected; and

   g) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

49. **Typicality:** The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like other members of the Class, made deliveries to customer's homes and had their biometric information and biometric identifiers collected, stored, and analyzed by Arlo's cameras and software without providing consent, nor did Defendant provide Plaintiffs and Class Members with a written policy made publicly available establishing a schedule and procedure for permanently destroying Plaintiffs and Class Members' biometric information and identifiers.

50.     **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs are able to fairly and adequately represent the interests of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

51.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with BIPA.

<u>**COUNT I**</u>
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiffs and the Class)**

52.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

53.     The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . .

. in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or information. . ." 740 ILCS 14/15(b).

54. Defendant failed to comply with these BIPA mandates.

55. Arlo is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

56. Plaintiffs and Class members are delivery drivers in Illinois who had their "biometric identifiers" and "biometric information," including scans of face geometry, collected, captured, received, or otherwise obtained by Arlo from video and/or images recorded by an Arlo device and scanned by Arlo software to differentiate between humans and non-human entrants on the camera-owner's property.

57. Plaintiffs and Class Member's face geometry was uploaded, stored, and mechanically measured and assigned values, to create numerical representations used as "face templates" that can be used to uniquely identify Plaintiffs and the Class Members. *See* 740 ILCS 14/10.

58. Arlo systematically and automatically collected, captured, or otherwise obtained Plaintiffs' and Class Members' "biometric identifiers" (which it used to create and store uniquely identifying face geometry) without first obtaining signed written releases, as required by 740 ILCS 14/15(b)(3), from any of them.

59. Plaintiffs' and the Class's pixelated infrared scans can be used to identify them and, therefore constitute "biometric identifiers" and/or "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

60. Defendant never informed Plaintiffs or members of the Class in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Defendant inform Plaintiffs and members of the Class in writing of the length of time for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

61. By collecting, capturing, storing, and/or using Plaintiffs' and members of the

Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

62. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Arlo comply with the BIPA's requirements for the collecting, storing, and using "biometric information" and "biometric identifiers" as described herein; (2) statutory damages of $1,000.00 pursuant to 740 ILCS 14/20 for each negligent violation of BIPA committed by Arlo; (3) statutory damages of $5,000.00 pursuant to 740 ILCS 14/20 for each intentional or reckless violation of BIPA committed by Arlo; and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiffs and the Class**

63. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

64. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention and deletion policy. Specifically, those companies must: (1) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information, *See* 740 ILCS 14/15(a).

65. Defendant failed to comply with these BIPA mandates.

66. Defendant is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

67. Plaintiffs are individuals who had their "biometric identifiers" and "biometric information" captured and/or collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

68. Plaintiffs' biometrics could be used to identify them and, therefore, constituted "biometric identifiers" and "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

69. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying Plaintiffs' biometric identifiers and information as specified by BIPA. *See* 740 ILCS 14/15(a).

70. Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometrics. As such, the only reasonable conclusion is that Defendant has not, and will not, destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

71. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collecting, storing, and using biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representative of the Class, and appointing their counsel as Class Counsel of the Class;

B. Declaring that Defendant's actions, as set out above, violate the BIPA, 740 ILCS 14/1, *et seq.*, with respect to Plaintiffs and Class Members;

C. Awarding statutory damages to Plaintiffs and Class Members of $1,000.00 pursuant to 740 ILCS 14/20(1) for each violation of BIPA committed negligently, and $5,000.00 pursuant to 740 ILCS 14/20(2) for each violation of BIPA committed

intentionally or recklessly;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and members of the Class, including *inter alia*, an order requiring Arlo Technologies, Inc., to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees pursuant to BIPA;

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

G. Awarding Plaintiffs and the Class such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38, Plaintiffs, individually and on behalf of the members of the Class, exercise their right under the Seventh Amendment to the United States Constitution and demand a trial by jury.

Dated: October 4, 2023

**BURSOR & FISHER, P.A**.

By:      */s/ L. Timothy Fisher*
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com

*Attorneys for Plaintiffs*